

McGILLIVRAY
WESTERBERG
& BENDER LLC

BY CERTIFIED MAIL

October 10, 2009

Barbara Swan
Wisconsin Power & Light Co.
4902 N. Biltmore Ln.
PO Box 77007
Madison, WI 53718-2132

Kristine A. Euclide, Registered Agent
Madison Gas & Electric Co.
133 S. Blair Street
P.O. Box 1231
Madison, WI 53701-1231

Owner or Managing Agent
Nelson Dewey Generating Station
11999 County Hwy. VV
Cassville, WI 53806-9722

Barth J. Wolf, Registered Agent
Wisconsin Public Service Corporation
700 N. Adams Street
P.O. Box 19001
Green Bay, WI 54307-9001

Owner or Managing Agent
Columbia Generating Station
P.O. Box 98
Portage, WI 53901

F. J. Buri, Registered Agent
Wisconsin Power & Light Co.
4902 N. Biltmore Ln.
PO Box 77007
Madison, WI 53718-2132

On behalf of Sierra Club and its members, we write to provide you with notice that we intend to file a civil lawsuit against the owners and operators of the Nelson Dewey Generating Station and the Columbia Generating Station for repeated violations of the federal Clean Air Act, 42 U.S.C. § 7401 *et seq.*, which occurred and continue to occur at those facilities. This notice is being provided pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. Part 54.

Wisconsin Power & Light ("WPL") owns and operates the Nelson Dewey power plant, in Cassville, WI, which consists of two cyclone boilers and associated equipment that is capable of generating a total of approximately 220 MW. WPL, Wisconsin Public Service Corporation ("WPSC") and Madison Gas & Electric Company ("MGE") own, and WPL operates, the Columbia Generating Station in Pardeeville, WI, which consists of two pulverized coal boilers and associated equipment rated at approximately 510 MW each. These plants release numerous air pollutants, including sulfur oxides (SOx), nitrogen oxides (NOx), carbon dioxide ($CO_2$), carbon monoxide (CO), mercury,

EXHIBIT A

305 S. Paterson St. • Madison, WI 53703 • P: 608.310.3560 • F: 608.310.3561 • www.mwbattorneys.com • info@mwbattorneys.com

particulate matter, and others. Individually and collectively these pollutants contribute to global warming, acid rain, regional haze, formation of ground level ozone or smog, pollution of surface waters, and other processes harmful to human health or the environment. The violations described in this Notice injure, and unless abated will continue to injure, the economic, aesthetic, health, and recreational interests of Sierra Club's members.

As described in detail below, Sierra Club alleges violations of the Wisconsin State Implementation Plan (SIP); violations of the Clean Air Act's prevention of significant deterioration ("PSD") requirements; violations of the operating permits issued to the plants; and violations of various permitting requirements contained in Wisconsin's SIP.

**Violations of the Prevention of Significant Deterioration Program of the Clean Air Act, 40 C.F.R. § 52.21 and Wis. Admin. Code ch. NR 405**

The owners and operators of the Nelson Dewey and Columbia stations have violated the Prevention of Significant Deterioration ("PSD") requirements of the Clean Air Act, 42 U.S.C. §§ 7470-7475 and the PSD and construction permitting requirements of Wisconsin's SIP, Wis. Admin. Code §§ 405 and 406, because they undertook numerous major modifications at those plants without complying with Clean Air Act requirements. These modifications were made without the required permits, without meeting the required emission limits, and without the required analysis of pollution impacts. Moreover, since each modification, the owners and operators had ongoing obligations to comply with Best Available Control Technology ("BACT") limits, which the owners/operators have failed to comply with on each day following each modification.

Under the Clean Air Act's PSD program and Wisconsin's SIP, a new major source of air pollution cannot be constructed, and an existing major source of air pollution cannot undergo a "major modification," without a permit, without complying with BACT limits, and without demonstrating compliance with air quality standards. *See* 42 U.S.C. §§ 7475(a) (prohibiting the construction of a major emitting facility without PSD review, issuance of a PSD permit, imposition of BACT limits and protection of air quality and increments), 7479(2)(C) ("construction" includes the "modification" of a source or facility); 40 C.F.R. § 52.21; Wis. Admin. Code §§ NR 405.07(1) (prohibiting the construction or major modification of a major stationary source without PSD review and permitting), NR 405.08 (requiring best available control technology for any new or modified source).

A "major modification" is "any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase" of a regulated air contaminant. 40 C.F.R. § 52.21; Wis. Admin. Code § NR 405.02(21). Included in the definition of "major source" are fossil fuel fired steam electric plants, like the Nelson Dewey and Columbia plants, as well as fossil fuel fired and boilers. 40 C.F.R. § 52.21; Wis. Admin. Code § NR 405.02(22)(a)(1).

For purposes of the PSD program, different regulations have applied at different times in Wisconsin. On June 19, 1978, EPA approved the Federal PSD program, 40 CFR 52.21 (b) through (w), into the Wisconsin SIP at 40 C.F.R. § 52.2581 because Wisconsin had not submitted an approvable PSD program.[1] 43 Fed. Reg. 26410. On May 27, 1999, EPA promulgated a final rule adopting Wisconsin's PSD program in Wis. Admin. Code ch. NR 405 in place of the federal rules in 40 C.F.R. § 52.21. 64 Fed. Reg. 28,745 (May 27, 1999). That rulemaking was effective on June 28, 1999. *Id.* Therefore, from June 19, 1978, until June 28, 1999, the PSD regulations in 40 C.F.R. § 52.21 applied to facilities in Wisconsin. From June 28, 1999, through January 16, 2009, the PSD regulations in the 1999 version of Wis. Admin. Code ch. NR 405 applied to sources in Wisconsin. On December 17, 2008, EPA promulgated a rule accepting certain revisions to the Wisconsin PSD program. 73 Fed. Reg. 76,560 (December 17, 2008).[2] Those revisions were effective January 16, 2009. *Id.* However, Sierra Club and Natural Resources Defense Council filed a petition for reconsideration and a petition for judicial review of EPA's December 17, 2008, action within the time provided by the Clean Air Act. The petition for judicial review has been stayed pending EPA's consideration of the petition for reconsideration. If the EPA grants reconsideration or the Seventh Circuit reverses and/or remands the December 2008 EPA action, the 1999 version of Wis. Admin. Code ch. NR 405 will again apply.

Pursuant to the PSD regulations applicable in Wisconsin at relevant times herein, emissions increases are measured as the difference between the annual average emissions during the 24 months prior to the project and the plant's post-project "actual emissions." 40 C.F.R. § 52.21(b)(2), (3)(i), and (21) (1993); Wis. Admin. Code §§ NR 405.02(1), 405.02(24)(a) (1999). Post-project "actual emissions" are the emission source's potential to emit unless the source is an electric utility steam generating unit that meets certain monitoring and reporting requirements. 40 C.F.R. § 52.21(b)(21) (1993); Wis. Admin. Code § NR 405.02 (1) (1999).

An electric utility steam generating unit, such as Nelson Dewey units 1 and 2 and Columbia units 1 and 2, can determine emission increases by comparing its pre-project annual "actual emissions" to its "representative actual annual emissions… *provided* the source owner or operator maintains and submits to the department, on an annual basis for a period of 5 years from the date the unit resumes regular operation, information

---

[1] On August 19, 1980, EPA gave Wisconsin partial delegation to run the Federal PSD program and on November 13, 1987, gave Wisconsin full delegation of the program, except for sources in Indian country. Pursuant to these delegations, the PSD program that applied in Wisconsin was the federal program at 40 C.F.R. § 52.21 and EPA was the ultimate permitting agency. However, the Wisconsin DNR had authority to issue permits on behalf of the EPA, subject to EPA's oversight.

[2] Following the Environmental Protection Agency's adoption of revisions to the Wisconsin State Implementation Plan ("SIP"), 73 Fed. Reg. 76,560 (Dec. 17, 2008), emission increases are measured: (a) by comparing "the potential to emit from each new emissions unit following completion of the project and the baseline actual emissions for each unit before the project" for new units; and (b) by comparing "the projected actual emissions and the baseline actual emissions" for modified units (unless that approval is stayed or vacated or reconsideration is granted).

demonstrating that the physical or operational change did not result in an emissions increase." 40 C.F.R. § 52.21(b)(21)(v) (1993); Wis. Admin. Code § NR 405.02(1)(d) (1999) (emphasis added). This alternative "actual-to-projected-actual" test is conditional and only applies when the owner or operator complies with the monitoring and reporting requirements. Because WPL did not conduct the monitoring and reporting required to take advantage of this "actual-to-projected-actual" test for any of the projects below, the actual-to-potential test applies to calculate emission increases from the projects.[3]

Each of the projects below resulted in significant net emission increases for numerous pollutants. Increases are "significant" when they exceed pollutant-specific emissions rates provided in Wisconsin's SIP. Wis. Admin. Code § NR 405.02(27)(a).

WPL undertook numerous capital projects at the Nelson Dewey plant. Those projects include the following, which constitute major modifications[4] for purposes of the PSD program.

---

[3] Sierra Club reasonably anticipates that if the only alternative test (actual-to-projected-actual) were applied to these projects, they would nevertheless result in significant net emission increases of numerous pollutants, including but not limited to sulfur dioxide, nitrogen oxides, carbon monoxide, carbon dioxide, particulate matter, and sulfuric acid mist.

[4] More than one "project" (designated by a separate work order) may constitute a single major modification. Listing here by separate work orders does not indicate or suggest that each work order constitutes a separate "major modification."

4

| Project | Work Order (if known) | Approximate End of Project/Return to Service Date (if known) |
|---|---|---|
| NED 1&2 Cyclone Burners | | January- February, 2003 |
| NED 1 Slag Tube Replacement | 8601-11/12-27996 | 11/14/00 |
| NED 1 Superheater and Reheater replacement | 8601-11-27850 | 11/14/00 (Note: same time as NED 1 slag tube replacement) |
| NED 2 Condenser Retubing | 8601-11/12-27699 | 4/17/00 (Note: same as Unit 1 forced draft fan relocation) |
| Relocated NED 1 forced draft fan air inlet | 8601-11-27680 | 4/17/00 |
| NED 1 coal distribution feeders on crushers | 8601-11-27700 | Unknown at this time |
| NED 2 Remove and Replace Superheater and Reheater sections | 8601-11/12-27989 | Approved August 2000 |
| Change in method of operation to burn pet coke[5] | | Approx 1998 and 1999 |
| NED 1&2 sootblowers and water lances | 8601-11-27452 | 11/19/99 |

 WPL failed to (1) obtain a permit from the U.S. EPA and Wisconsin DNR prior to commencing construction on each of the projects set forth above, as required by 42 U.S.C. § 7475, 40 C.F.R. § 52.21, and Wis. Admin. Code chs. NR 405 and 406[6]; (2) comply with best available control technology limits required by 40 C.F.R. § 52.21 and Wis. Admin. Code § NR 405.08 for the NED boilers; (3) conduct the analyses required by 40 C.F.R. § 52.21 and Wis. Admin. Code §§ NR 405.11 and 405.13; and (4) submit the information required by 40 C.F.R. § 52.21 and Wis. Admin. Code § NR 405.12. Each day, beginning with the first day on which construction commenced on each separate major modification and continuing through the present, constitutes a separate and distinct violation of each of these provisions. Moreover, each day also constitutes a distinct violation of section II.J. of Permits 122014530-P01, 122014530-P03, 122014530-P10 and 122014530-P11.

---

[5] The NED facility burned pet coke at various times between 1965 and 1985 but did not burn coke for at least six years before beginning to do so again in 1998 and later increasing the amount used. This change is not exempt pursuant to Wis. Admin. Code § NR 405.02(21)(b)5. (1999) or 40 C.F.R. § 52.21(b)(2)(iii)(b) (1998) because pet coke use was prohibited by a federally enforceable permit issued pursuant to Wis. Admin. Code ch. NR 407 and because the phrase "alternative fuel" in those sections refers to a primary fuel and not to a supplementary, or "kicker," fuel as WPL used pet coke at NED.

[6] In addition to the Prevention of Significant Deterioration program in Wis. Admin. Code ch. NR 405, the Wisconsin SIP requires sources to obtain a permit from the Wisconsin DNR prior to any modification. Wis. Stat. § 285.60(1)(a)1.; Wis. Admin. Code § 406.03. The term "modification" for this program is defined as "any physical change in, or change in the method of operation of, a stationary source that increases the amount of emissions of an air contaminant or that results in the emission of an air contaminant not previously emitted." Wis. Admin. Code § NR 400.02(99). The projects set forth above, fit this definition and was not exempt from permitting requirements in Wis. Admin. Code ch. NR 406.

WPL also undertook numerous capital projects at the Columbia Generating Station. Those projects include the following, which constitute major modifications[7] for purposes of the PSD program.

| Project | Work Order (if known) | Approximate End of Project/Return to Service Date (if known) | Actual Cost of Project (if known) |
|---|---|---|---|
| Unit 2: Boiler Reheat Front Pendants and Finishing Reheat Section | | March 18, 2005[8] | $9,559,573[9] |
| Unit 2: Economizer, Superheater, and Superheater Division Panels replacement[10] | 4501-11/12-27674[11] | May 19, 2000 | $14,943,277 |

The owners and operators of the Columbia plant failed to (1) obtain a permit from the U.S. EPA and Wisconsin DNR prior to commencing construction on each of the projects set forth above, as required by 42 U.S.C. § 7475, 40 C.F.R. § 52.21, and Wis. Admin. Code chs. NR 405 and 406[12]; (2) comply with best available control technology limits required by 40 C.F.R. § 52.21 and Wis. Admin. Code § NR 405.08 for the boilers; (3) conduct the analyses required by 40 C.F.R. § 52.21 and Wis. Admin. Code §§ NR 405.11 and 405.13; and (4) submit the information required by 40 C.F.R. § 52.21 and

---

[7] More than one "project" (designated by a separate work order) may constitute a single major modification. Listing here by separate work orders does not indicate or suggest that each work order constitutes a separate "major modification."

[8] See Letter from Lloyd Weber, WPL, to Christy L. Zehner, Wisconsin Public Service Commission, PSC Ref #50615 (March 13, 2006).

[9] See PSC Ref #50615.

[10] Note that unlike the superheater replacement on Unit 1, for which WPL sought and the Wisconsin DNR granted WPL permission to use a pre-project "baseline" period for measuring emission increases other than the 24 months immediately preceding the project, WPL never sought and DNR never granted a different "baseline" period for this project. Therefore, the "baseline" period for purposes of calculating an emission increase is the 24 months immediately preceding the project.

[11] WPL sought to designate this project as a "Pollution Control Project" by combining it with the installation of a Selective Catalytic Reduction ("SCR") device to control nitrogen oxide emissions. However, WPL never installed the SCR and, therefore, the basis for WPL's "Pollution Control Project" claim never occurred. WPL never sought, and the Wisconsin Department of Natural Resources never approved, a Pollution Control Project exemption for the economizer and superheater replacement without also installing an SCR device.

[12] In addition to the Prevention of Significant Deterioration program in Wis. Admin. Code ch. NR 405, the Wisconsin SIP requires sources to obtain a permit from the Wisconsin DNR prior to any modification. Wis. Stat. § 285.60(1)(a)1.; Wis. Admin. Code § 406.03. The term "modification" for this program is defined as "any physical change in, or change in the method of operation of, a stationary source that increases the amount of emissions of an air contaminant or that results in the emission of an air contaminant not previously emitted." Wis. Admin. Code § NR 400.02(99). The projects set forth above, fit this definition and was not exempt from permitting requirements in Wis. Admin. Code ch. NR 406.

Wis. Admin. Code § NR 405.12. Each day, beginning with the first day on which construction commenced on each separate major modification and continuing through the present, constitutes a separate and distinct violation of each of these provisions. Moreover, each day also constitutes a distinct violation of section II.J. of Permits 111003090-P01, 111003090-P10, 111003090-P20 and 111003090-P21.

### Violations of Clean Air Act Title V and Wis. Admin. Code ch. NR 407 Arising From Modifications to Nelson Dewey and Columbia.

Pursuant to Section 502(a) of the Clean Air Act, 42 U.S.C. § 7661(a), it is unlawful to operate without, or in violation of, a permit issued pursuant to Clean Air Act subchapter (title) V, 42 U.S.C. §§ 7661, *et seq*. Wisconsin's major source operating permit program, also known as Wisconsin's Part 70 or Title V program, was approved on March 6, 1995 and became effective on an interim basis on April 5, 1995. *See* 60 Fed. Reg. 12,128 (Mar. 6, 1995) (to be codified at 40 C.F.R. pt. 70). US EPA later granted full approval of Wisconsin's Title V program on December 4, 2001. *See* 66 Fed. Reg. 62,951 (Dec. 4, 2001).

Wisconsin's Title V program requires an owner or operator to file an application to modify an existing Title V permit when the source makes modifications not authorized by the existing permit. Wis. Stat. §§ 285.60, 285.62; Wis. Admin. Code §§ NR 407.04(1)(b), 407.13. An application to modify a Title V permit must be filed prior to making the modification, Wis. Admin. Code § NR 407.04(1)(b), and must include sufficient information to allow the permitting agency and the public to determine whether the source is in compliance with all applicable Clean Air Act requirements. Wis. Admin. Code § NR 407.05(4)(e) and (i)1. All material statements in the application must be true. Wis. Admin. Code § NR 407.05(10). An incorrect or incomplete application must be revised "promptly" by the applicant. Wis. Admin. Code § NR 407.05(9). Moreover, pursuant to Wis. Stat. § 285.60(1)(b)1., no person may operate a modified source without an operating permit issued pursuant to Wis. Stat. § 285.62. Each day of operation since each of the modifications to the Nelson Dewey boilers set forth above also constitutes a violation of the requirements to apply for a revised Title V operating permit.

Pursuant to Wis. Admin. Code § NR 407.05(4)(i), each Title V operating permit application must contain a certification by the owner or operator that the source is currently in compliance with all applicable requirements, including PSD, NSPS and Clean Air Act section 112, 42 U.S.C. § 7412, requirements. Where a source is not in compliance with all requirements, the application must contain a narrative description of how the source will achieve compliance. Wis. Admin. Code § NR 407.05(4)(h)2.c. Additionally, for such sources that are not in compliance, the source must propose a compliance schedule that meets certain minimum requirements, including "a series of remedial measures, including an enforceable sequence of actions with milestones, leading to compliance with any applicable requirements for which the source will be in noncompliance at the time of permit issuance." Wis. Admin. Code § NR 407.05(4)(h)3. Again, there is an ongoing obligation to correct or supplement any pending application. Wis. Admin. Code § NR 407.05(9). WPL's Title V applications and compliance certifications: (1) failed to identify PSD requirements in Wis. Admin. Code ch. NR 405

(including BACT limits) and the construction permitting requirements in Wis. Admin. Code ch. NR 406 as applicable requirements as a result of the major modifications set forth above; (2) incorrectly certified compliance with all applicable requirements by failing to identify the violations set forth in this Notice of Intent; and (3) failed to propose a compliance schedule meeting the requirements in Wis. Admin. Code § NR 407.05(4)(h). The owners and operators also failed, at any time, to correct or supplement the permit applications to reflect noncompliance with these requirements. Therefore, the owners and operators have been in violation of these requirements to disclose noncompliance and propose a compliance schedule in their pending Title V applications.

Wisconsin Administrative Code §§ NR 407.05(4)(i)3 and 439.03(1)(c), (9), (10), and Permits 122014530-P01, 122014530-P03, 122014530-P10, 122014530-P11, 111003090-P01, 111003090-P10, 111003090-P20 and 111003090-P21 require the owners and operators of the Nelson Dewey and Columbia plants to submit certifications of compliance annually to the Department of Natural Resources and U.S. EPA. Such certifications must be signed by a responsible official, based on information and belief formed after reasonable inquiry, and must be truthful. Wis. Admin. Code §§ NR 439.03(9), (10). The certifications submitted by the owners and operators of the plant, and their representatives, should have identified each of the violations set forth above. At least once per year, the owners and operators of the Nelson Dewey and Columbia plants, through WPL, certified compliance with all applicable requirements. None of the certifications filed identified the violations set forth above. Each of the days on which each incorrect or incomplete compliance certification was filed, and each subsequent day on which each such certification was not corrected, constitutes a separate and distinct violation of each of these requirements and of Wisconsin Administrative Code §§ NR 407.05(4)(i)3 and 439.03(1)(c), (9), (10), Permits 122014530-P01, 122014530-P03, 122014530-P10, 122014530-P11, 111003090-P01, 111003090-P10, 111003090-P20 and 111003090-P21 section II.N, and 42 U.S.C. § 7661a(a).

Pursuant to Title V of the Clean Air Act, the Nelson Dewey and Columbia plants' operating permits provide, in section II.B. of each permit, that: "no person may cause, allow, or permit emissions of any air contaminant into the ambient air in excess of the limits set in chs. NR 400 to 499, Wis. Adm. Code." Therefore, each of the violations set forth in the preceding sections also constitutes a violation of permit section II.B. and 42 U.S.C. § 7661a(a).

Additionally, section II.J. of the the Nelson Dewey and Columbia plants' operating Permits 122014530-P01, 122014530-P03, 122014530-P10, 122014530-P11, 111003090-P01, 111003090-P10, 111003090-P20 and 111003090-P21 prohibit construction and modification without obtaining permits from the Department of Natural Resources. Because the owners and operators failed to obtain permits for each of the modifications set forth above, each day beginning with the first day on which construction commenced on each of the modifications above and continuing through the present also constitutes a separate and distinct violation of section II.J. of Permits 122014530-P01, 122014530-P03, 122014530-P10, 122014530-P11, 111003090-P01, 111003090-P10, 111003090-P20 and 111003090-P21.

Lastly, section II.D. of each of the operating permits issued to the Nelson Dewey and Columbia plants required the owners and operators to report violations of permit conditions. Sierra Club has reviewed the files for the Nelson Dewey and Columbia plants at the Department of Natural Resources and determined that the owners and operators of the Columbia Generating Station have failed to report each of the violations set forth above. Each day, beginning with the first day on which construction commenced on each of the modifications set forth above and continuing through the present, constitutes a separate and distinct violation of section II.D. of each of the operating permits issued for the Nelson Dewey and Columbia plants.

## Notice

The citizen suit provision of the Clean Air Act allows Sierra Club to commence suit in a United States district court against you for violations of an emission standard or limitation. 42 U.S.C. § 7604(a).[13] An emission standard or limitation is defined as any requirement under 42 U.S.C. § 7411 or § 7412, any condition or requirement applicable under a state implementation plan approved by the U.S. EPA, any Title V permit, or any requirement to obtain a permit as a condition of operations. 42 U.S.C. § 7604(f). This letter serves as your notice that Sierra Club intends to file a suit, or to amend its pleadings in any pending enforcement action, whichever appropriate, to enforce the Clean Air Act for the violations described herein and any other violations for which this letter provides sufficient notice. The Sierra Club will ask the Court to impose appropriate injunctive relief, civil penalties, a beneficial environmental project in the areas impacted by air pollution emissions from the Nelson Dewey and Columbia plants, 42 U.S.C. § 7604(g)(2), and Sierra Club's costs of litigation and attorneys' fees.

If you believe any of the facts described above are in error or have any information indicating that you have not violated the Clean Air Act we urge you to contact the undersigned counsel immediately. Sierra Club is interested in obtaining early and prompt resolution of these violations.

Sincerely,

McGILLIVRAY WESTERBERG & BENDER LLC

David C. Bender

Counsel for Sierra Club

---

[13] It also allows a suit, without prior notification, for violations of the requirement to obtain a PSD permit. 42 U.S.C. § 7604(a)(3). Sierra Club reserves the right to file such claims at any time.

BY CERTIFIED MAIL

Lisa Jackson, Administrator
US EPA Administrator
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Bharat Mathur
Acting Regional Administrator
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604

James E. Doyle
Governor
115 E State Capitol
Madison, WI 53702

Secretary Matthew Frank
Wisconsin DNR
101 South Webster Street
Madison, WI 53702

John Van Hollen, Attorney General
Thomas Dawson, Asst. Attorney General
Wisconsin Department of Justice
17 West Main Street
Madison, WI 53703

Hon. Eric H. Holder, Jr.
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001