IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SIERRA CLUB, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|  vs. | ) |
| | )  Civil Action No.  3:10-CV-511-wmc |
| WISCONSIN POWER AND | ) |
| LIGHT COMPANY, | ) |
| | ) |
|    Defendant. | ) |

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT WISCONSIN POWER AND LIGHT'S MOTION TO SCHEDULE THE REMEDY PHASE OF THE CURRENTLY BIFURCATED TRIAL SO THAT IT OCCURS AT LEAST FIVE MONTHS AFTER THE LIABILITY PHASE**
_____

   Plaintiff Sierra Club provides this Response in Opposition to Wisconsin Power and Light Company's Motion to Schedule the Remedy Phase of the Currently Bifurcated Trial So That It Occurs At Least Five Months After the Liability Phase (Motion) filed on November 16, 2010 (Dk#31).  Wisconsin Power and Light Company (WPL) moves the Court to revise the current scheduling order in this case (Dk#28).  The current scheduling order sets the remedy phase trial to begin immediately following the liability phase trial.  WPL wants the remedy phase trial to commence at least five months after the liability phase trial.  For the reasons explained below, the Court should deny WPL's motion.

   WPL correctly states that the Seventh Circuit has held that bifurcation should only be used if it will not unfairly prejudice the non-moving party.  Motion at 2.  While this is technically not a motion to bifurcate, it is similar enough that WPL apparently feels that the bifurcation

1

standard is appropriate to use in addressing the current issue. Sierra Club agrees. Thus, the Motion should be denied if it will prejudice Sierra Club.

Delay in reaching resolution of this case will prejudice Sierra Club. Delay is also against the public interest. Sierra Club alleges that WPL is illegally emitting pollution from two of WPL's coal fired power plants. Simply put, pollution from coal fired power plants can and does kill people. *See e.g. North Carolina v. TVA*, 593 F.Supp.2d 812, 822 (W.D.N.C. 2009) *rev'd on other grounds*, No. 09-1623, --- F.3d ----, 2010 WL 2891572 (July 26, 2010) (In tort case against coal-fired power plants "Court finds that, at a minimum, there is an increased risk of incidences of premature mortality in the general public associated with $PM_{2.5}$ exposure, even for levels at or below the NAAQS standard of 15 [u]g/m $^3$."); *Sierra Club v. TVA*, 592 F.Supp.2d 1357, 1371 (N.D. Al. 2009) (In Clean Air Act enforcement action against coal-fired power plant, court holds "there is no level of primary particulate matter concentration at which it can be determined that no adverse health effects occur."); 70 Fed. Reg. 65,983, 65,988 (Nov. 1, 2005) (US Environmental Protection Agency states "emissions reductions resulting in reduced concentrations below the level of the standards may continue to provide additional health benefits to the local population."); 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (US EPA unable to find evidence supporting the selection of a threshold level of $PM_{2.5}$ under which the death and disease associated with $PM_{2.5}$ would not occur at the population level); 75 Fed. Reg. 22,896, 22,900 (Apr. 30, 2010) (US EPA states "Both ozone and PM2.5 are associated with serious public health problems, including premature mortality . . . .") *Am. Farm Bureau Fed'n v. E.P.A.*, 559 F.3d 512, 515 (D.C. Cir. 2009) ("Studies have demonstrated that both fine and coarse PM can have negative effects on public health and welfare. For example, each is associated with increased mortality (premature death) rates and morbidity (illness) effects such as cardiovascular

disease and decreased lung function."). The pollution from WPL's power plants also causes other significant adverse public health impacts as well as adverse impacts to agriculture, forestry and recreational interests such as fishing.

WPL supports its request by citing to various other New Source Review/Prevention of Significant Deterioration (NSR/PSD) enforcement cases where courts have bifurcated the liability and remedy trials. Cases that have taken up to a decade to resolve are hardly procedural models to emulate. *See e.g.* Motion at 2 *citing e.g. United States v. Alabama Power Co.*, No. 2:**01**-cv-152-VEH (N.D. Ala.) (still pending); *United States v. DukeEnergy Corp.*, 1:**00**-cv-01262-NCT-WDD (M.D.N.C.) (still pending); *United States v. Cinergy Corp.*, No. 1:**99**-cv-1693-LJM-JMS (S.D. Ind.) (pending in the 7th Circuit).

Apparently having learned from these decade long cases, in the United States' most recent NSR/PSD enforcement case, *United States v. DTE Energy Company*, Civil Action No. 2:10-cv-13101-BAF-RSW (E.D. Mich. 2010), the United States moved for a preliminary injunction the day after the Complaint was filed. *Id.*, Complaint Dk#1, Motion for Preliminary Injunction, Dk#8. The defendants in that case tried to stay the motion for preliminary injunction. *Id.*, Dk#16. The parties fully briefed the preliminary injunction by November 18, 2010. *Id.*, Dk#58. The court ended up setting the motion for a preliminary injunction for a hearing on January 19, 2011, a little over five months after EPA filed its complaint. *Id.*, Dk#26. Thus, recognizing the problems that occur when these types of cases drag on too long, the United States is seeking relief from pollution much quicker than even the current trial schedule in this case provides.

This Court has previously scheduled and resolved a NSR/PSD enforcement case with the remedy trial immediately following the liability trial. In *Sierra Club v. Morgan*, 07-C-251-S

(W.D. Wisc.), Judge Shabaz scheduled one trial. *Id.*, June 13, 2007 Preliminary Pre-Trial Conference Order, at second page. When the defendant in that case moved to bifurcate, the Court agreed to do so, but moved the trial on liability up and ordered the trial on remedy to begin immediately after liability. *Id.*, September 6, 2007 Preliminary Pre-trial Conference Order, Dk#11. The scheduling approach by Judge Shabaz in that case resulted in that case being resolved in a relatively short time, relative to other NSR/PSD enforcement cases against coal-fired power plants. The experience in that case demonstrates that trial schedules even shorter than the current one in this case are feasible and reasonable in this type of case.

WPL's Motion is premised mainly on its assertion that determining the Best Available Control Technology (BACT) emission limits will be complicated for the Court during the remedy phase of this case. Motion at 3-6. However, that need not be so. BACT emission limits are set case-by-case based on the facts of a particular plant, but they always have a "floor." That is, regardless of the case–by-case factors, a BACT emission limit can never be less stringent than the applicable New Source Performance Standard in 40 C.F.R part 60. *See* 40 C.F.R. § 52.21(b)(12)(1996) ("In no event shall application of best available control technology result in emissions of any pollutant which would exceed the emissions allowed by any applicable standard under 40 CFR parts 60 and 61.") New Source Performance Standards are set out in numeric form in the regulations and can be determined by reference to the Code of Federal Regulations. During the remedy phase in this case, if it remains on its current schedule, Sierra Club will rely on the New Source Performance Standard BACT floor to determine the excess emissions by WPL to determine the appropriate civil penalty, prospective injunctive relief (compliance with the New Source Performance Standard before a permit setting forth additional limits is obtained from Wisconsin Department of Natural Resources (DNR)), and remedial

4

injunctive relief (the amount of pollution reduction required of WPL to offset its past illegal emissions). This will allow the Court to determine the applicable emission limit immediately by reference to the Code of Federal Regulations without the long delay and "complications" of determining case-by-case BACT limits. Since, if Plaintiff proves liability, WPL will be required to obtain a permit from the Wisconsin DNR, and that permit must include BACT limits, it will ultimately be left to the DNR to determine the BACT limits outside of and after the trial in this case concludes. In other words, there is no need to undertake the "complicated" BACT analysis on which WPL premises its argument for bifurcation and a delayed remedy phase.

Finally, Sierra Club notes that bifurcating the trial can be inefficient.[1] Bifurcation requires the parties to put on much of the same evidence, or at least very similar evidence, twice. For example, Sierra Club intends to put on an expert witness who will use a computer model which will estimate ambient concentrations of air pollution at various locations caused by WPL's power plants and a health expert to discuss the types of adverse health impacts that are caused by the ambient pollution levels created by WPL's power plants. This evidence relates to "standing" in the liability phase as well as injunctive relief in the remedy phase. Additionally, the same evidence of Defendant's emission rates, compared to the New Source Performance Standard "floor" for BACT, is relevant for proving liability in Plaintiff's Second Claim, Doc. 1 ¶¶ 135-140, as well as to determine the amount of illegal emissions that occurred and should be off-set in the remedy phase. It is inefficient for Sierra Club to put on the same witnesses twice, five months apart, to present the same evidence. Yet, that is exactly what WPL's Motion would do.

---

[1] Sierra Club intends to file a motion at a later point to have the scheduling order changed to not bifurcate the trial at all. Sierra Club advocated this point during the scheduling conference with Magistrate Judge Crocker.

## **CONCLUSION**

For all of the above reasons, Sierra Club respectfully requests that WPL's Motion be denied.

    Respectfully submitted,

    /s Robert Ukeiley

    Robert Ukeiley
    Law Office of Robert Ukeiley
    435R Chestnut Street, Ste. 1
    Berea, KY 40403
    Tel: (859) 986-5402
    Fax: (866) 618-1017
    Email: rukeiley@igc.org

    MCGILLIVRAY WESTERBERG & BENDER LLC

    David C. Bender
    Christa O. Westerberg
    Pamela R. McGillivray
    305 S. Paterson Street
    Madison, WI 53703
    Tel. 608.310.3560
    Fax 608.310.3561
    Email: bender@mwbattorneys.com
           westerberg@mwbattorneys.com
           mcgillivray@mwbattorneys.com

    *Attorneys for the Plaintiff Sierra Club*

Dated: November 23, 2010

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2010, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will send notification of this filing automatically to all counsel of record, including:

Robert R. Clark, No. 3488-49
Scott R. Alexander, No. 16345-49
TAFT STETTINIUS & HOLLISTER
One Indiana Square, Suite 3500
Indianapolis, IN 46204
317/713-3500
rclark@taftlaw.com
salexander@taftlaw.com

Bruce A. Schultz
COYNE SCHULTZ BECKER & BAUER
150 E. Gilman St., Suite 1000
Madison, WI 53703
608/255-1388
bschult@cnsbb.com

Daniel Lloyd Siegfried
dansiegfried@alliantenergy.com

Jeffrey K. Rosencrants
jeffrosencrants@alliantenergy.com

Michael S. Greiveldinger
michaelgreiveldinger@alliantenergy.com

   /s/ Robert Ukeiley